IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM AVELLONE, not individually but solely as the Subchapter V Trustee of Ford City Condominium Association,<br><br>　　　　　Appellant,<br><br>　　v.<br><br>UNITED STATES LIABILITY INSURANCE COMPANY,<br><br>　　　　　Appellee. | No. 23-cv-12436<br><br>Judge Andrea R. Wood<br><br>On Appeal from the United States Bankruptcy Court for the Northern District of Illinois,<br>Case No. 23 A 00090 |

## MEMORANDUM OPINION AND ORDER

Appellant William Avellone ("Trustee"), in his capacity as the subchapter V trustee of Ford City Condominium Association ("Debtor"), has brought this appeal from the decision of the Bankruptcy Court dismissing Counts I, II, and III of his adversary complaint ("Complaint"). The Complaint sought, as relevant here, a declaratory judgment that United States Liability Insurance Company ("USLI") must provide insurance coverage under a Directors and Officers Liability Policy ("Policy"), a finding that USLI was in breach of contract due to its failure to provide such coverage, and a finding that USLI violated Illinois law through its vexatious and unreasonable conduct when handling and investigating the Trustee's claim.[1] The Bankruptcy Court dismissed all three counts, reasoning that the plain and unambiguous language of the Policy bars coverage for the Trustee's claim and finding that the Policy exclusion cited by USLI in denying coverage

---

[1] Count IV of the Complaint requested a finding that Debtor's former officers and board members breached their fiduciary duties to Debtor and Debtor's unit owners. (Compl. ¶¶ 66–123.) Count IV does not contain allegations against USLI, and the Bankruptcy Court did not consider Count IV in its ruling.

is not an unlawful *ipso facto* clause. For the reasons stated below, the Court affirms the decision of the Bankruptcy Court.

## BACKGROUND

Debtor is a condominium association for a property consisting of seven apartment buildings, 319 residential condominium units, and 38 garage units. (App. at 3–28 ("Compl."), Compl. ¶ 67, Dkt. No. 7-1.)[2] On April 20, 2021, Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code, and the Bankruptcy Court subsequently appointed the Trustee as the subchapter V trustee. (*Id.* ¶ 41.) Debtor filed for bankruptcy following a series of financial and managerial errors, including "[m]ounting unpaid bills, poor record keeping and accounting practices, decaying building systems, plus mismanagement." (*Id.* ¶ 40.) On September 2, 2021, the Bankruptcy Court granted the Trustee's motion to remove Debtor as the debtor-in-possession and appointed the Trustee to perform Debtor's duties under 11 U.S.C. §§ 704(a)(8) and 1106(a)(1), (2), and (6). (Compl. ¶¶ 6, 43.)

At the time of its bankruptcy, Debtor held the Policy with USLI, which was in effect from at least July 11, 2019, to July 11, 2022. (*Id.* ¶ 35) The Policy provides coverage for "Loss" arising from "Wrongful Acts" committed by the "Organization," which as explained below is defined to include Debtor, or by "Individual Insureds," which include Debtor's former officers and board members. (*Id.* ¶¶ 36–37.) The Policy also contains a series of exclusions from coverage, including an insured-versus-insured exclusion ("Insured vs. Insured Exclusion"), which provides, in part:

> [USLI] shall not be liable to make payment for Loss or Defense Costs . . . in connection with **any Claim made against the Insured** arising out of, directly or indirectly resulting from or in consequence of, or in any way involving: . . .

---

[2] For references to the record on appeal, the Court primarily cites the Appendix submitted along with the Trustee's initial brief ("App.," Dkt. No. 7-1).

2

> (8) any Claim **by, at the behest of, or on behalf of the Organization** and/or any Individual Insured . . . .

(*Id*. ¶ 38 (emphasis added); App. at 29–54 ("Policy"), Policy at 38–39 (emphasis added).) The Policy goes on to identify an exception to the Insured vs. Insured Exclusion ("Derivative Action Exception"), which provides:

> [The Insured vs. Insured] Exclusion shall not apply to:
>
> a. any derivative action on behalf of, or in the name or right of the Organization, if such action is brought and maintained totally independent of, and without the solicitation, assistance, participation or intervention of ***any of the Insureds*** . . . .

(Compl. ¶ 38 (emphasis added); Policy at 39 (emphasis added).)

Under the Policy, "Insured" means "the Organization and the Individual Insureds." (Policy at 36.) The Policy further defines "Organization" to mean Debtor, any subsidiary of Debtor, and most relevant here:

> [A]ny person or entity while acting in the capacity of receiver, ***bankruptcy trustee***, or debtor in possession of [Debtor] or [any subsidiary of Debtor] under the United States bankruptcy law or equivalent status under the law of any other jurisdiction, ***but only while performing such duties on behalf of any Insured***."

(*Id.* at 54 (emphasis added).)

Regarding the impact of bankruptcy proceedings, the Policy also features a provision ("Bankruptcy Provision") that states, in relevant part:

> Any person or the legal representative thereof who has secured . . . judgment [against USLI] . . . shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy. . . . Bankruptcy or insolvency of the Insured or their successors in interest ***shall not relieve [USLI] of its obligations*** hereunder.

(App. at 108–18 ("Appellant's Resp. to Mot. to Dismiss"), Appellant's Resp. to Mot. to Dismiss ¶ 22 (emphasis added); Policy at 45 (emphasis added).)

3

On July 6, 2022, the Trustee issued a written demand to USLI, seeking coverage and payment under the Policy for losses sustained by Debtor's bankruptcy estate and creditors due to alleged breaches of fiduciary duty and mismanagement by Debtor's former officers and board members. (Compl. ¶ 44; App. at 55–56.) USLI responded on July 15, 2022, denying coverage based on the Insured vs. Insured Exclusion because the Trustee "is part of the 'Organization' and he brings his claim against [Debtor] and its board members on behalf of the 'Organization,'" and further explaining that the Trustee "does not bring a derivative claim." (Compl. ¶¶ 45–46; App. at 60.) On March 2, 2023, the Trustee sent a follow-up letter to USLI, disputing USLI's application of the Insured vs. Insured Exclusion to his claim and arguing that the Policy requires USLI to provide coverage. (Compl. ¶ 47; App. at 61–62.)

As the parties were unable to resolve their dispute on their own, the Trustee filed the three-count Complaint against USLI on April 19, 2023. Count I sought a declaratory judgment that USLI is obligated under the Policy to provide coverage "for the claims held by the Debtor's estate against the former board members and officers." (Compl. ¶¶ 49–53.) Count II requested a finding that USLI is in breach of contract for its failure to provide coverage under the Policy. (*Id.* ¶¶ 54–60.) Count III sought a finding that USLI has violated 215 ILCS 5/155(1) through its vexatious and unreasonable conduct in handling and investigating the Trustee's claim and an order requiring USLI to pay penalties, including reasonable attorneys' fees and costs. (Compl. ¶¶ 61–65.)

USLI filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Bankruptcy Court granted the motion and dismissed all three counts. (Mem. Op. at 5, Dkt. No. 1-4.) In so doing, the Bankruptcy Court found that the Policy's plain language bars coverage. According to the Bankruptcy Court, the Policy's language is

"unambiguous" in that "the 'Organization' expressly includes bankruptcy trustees and debtors-in-possession," thus subjecting them to the Insured vs. Insured Exclusion. (*Id.* at 3–4.) Furthermore, the Bankruptcy Court determined that the Insured vs. Insured Exclusion does not constitute an unlawful *ipso facto* clause under 11 U.S.C. § 541(c). Specifically, the Bankruptcy Court expressly declined to follow a decision from an Illinois state appellate court, which held that an exclusion with language similar to that at issue here was an unenforceable *ipso facto* clause because it was "conditioned on the commencement of [a] bankruptcy case." (*Id.* at 4 (quoting *Yessenow v. Exec. Risk Indem., Inc.*, 953 N.E.2d 433, 441 (Ill. App. Ct. 2011)).) Instead, the Bankruptcy Court determined that the Policy language did not generate a forfeiture, modification, or termination of Debtor's interest in property. (*Id.* at 4.) Accordingly, the Bankruptcy Court dismissed Counts I, II, and III. This appeal followed.

## DISCUSSION

Under 28 U.S.C. § 158(a), federal district courts have jurisdiction to review bankruptcy court decisions. When considering a bankruptcy appeal, a district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *Stamat v. Neary*, 635 F.3d 974, 979 (7th Cir. 2011); *In re Brittwood Creek, LLC*, 450 B.R. 769, 773 (N.D. Ill. 2011). Accordingly, this Court reviews *de novo* the Bankruptcy Court's dismissal of the Complaint pursuant to Rule 12(b)(6). *See Zedan v. Habash*, 529 F.3d 398, 403 (7th Cir. 2008).

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the

5

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). In evaluating the Complaint in this case, the Court must construe its allegations in the light most favorable to the Trustee, accepting as true all well-pleaded facts and drawing all possible inferences in the Trustee's favor. *Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 862 (7th Cir. 2016) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). This Court may affirm the Bankruptcy Court's dismissal on any grounds supported by the underlying record. *See McCarthy v. Kemper Life Ins. Co.*, 924 F.2d 683, 686 n.1 (7th Cir. 1991).

    **I.    Applicability of the Insured vs. Insured Exclusion**

Under Illinois law, "the construction of an insurance policy is a question of law," and the Court's objective is "to determine the intent of the contracting parties." *Sokol & Co. v. Atl. Mut. Ins. Co.*, 430 F.3d 417, 420 (7th Cir. 2005) (citing *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992)). The Court "look[s] to the policy as a whole 'with due regard to the risk undertaken, the subject matter that is insured, and the purposes of the entire contract." *Id.* (quoting *Outboard Marine*, 607 N.E.2d at 1212). If the language of the insurance policy is unambiguous, then the Court "give[s] [the language] its 'plain, ordinary, and popular meaning.'" *Lyerla v. AMCO Ins. Co.*, 536 F.3d 684, 687 (7th Cir. 2008) (quoting *Sokol & Co.*, 430 F.3d at 1212). However, "if the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous and will be construed in favor of the insured and against the insurer who drafted the policy." *Outboard Marine*, 607 N.E.2d at 1212 (citations omitted).

6

The Court looks first to the language of the Policy to determine whether the Insured vs. Insured Exclusion bars coverage for the Trustee's claim. That exclusion bars coverage for claims "against the Insured" brought "by . . . the Organization," and the Policy defines "Organization" as including a bankruptcy trustee. (Policy at 38–39, 54.) Thus, on its face, the plain language of the Policy appears unambiguously to bar coverage for the Trustee's claim. Indeed, that is what the Bankruptcy Court found. But in reaching that conclusion, the Bankruptcy Court did not expressly consider the language of the concluding clause of the provision defining "Organization." The question, then, is whether the language at the tail-end of the provision— stating that the "Organization" includes a bankruptcy trustee and other listed persons "but only while performing such duties on behalf of any *Insured*"—alters that conclusion. (*Id.* at 54.) Arguably, this language suggests that a bankruptcy trustee could perform actions that are not on behalf of a debtor and therefore would not fall within the exclusion.

Even considering the full definition, this Court agrees with the Bankruptcy Court that the Policy's definition of "Organization" unambiguously encompasses the Trustee in this case, thereby barring his claim. In an effort to find ambiguity in the Policy, the Trustee argues that he is acting not on behalf of Debtor but on behalf of Debtor's unit owners and creditors because he is marshalling assets to their benefit. In so arguing, however, the Trustee merely recounts the general duties expected of a bankruptcy trustee. *See In re Teknek, LLC*, 563 F.3d 639, 645 (7th Cir. 2009) ("The purpose and duty of the [bankruptcy] trustee is to gather the estate's assets for pro rata distribution to the estate's creditors."); *see also Fisher v. Apostolou*, 155 F.3d 876, 879 (7th Cir. 1998) ("[T]he [bankruptcy] trustee has the sole responsibility to represent the estate, by bringing actions on its behalf to marshal assets for the benefit of the estate's creditors.").

This Court understands the concluding clause, if anything, as merely recognizing the possibility that a duly appointed bankruptcy trustee may act in a personal capacity or otherwise beyond the scope of his official duties, in which case the trustee would not fall under the definition of "Organization" and the Insured vs. Insured Exclusion would not apply. *See, e.g.*, *In re Markos Gurnee P'ship*, 182 B.R. 211, 217 (Bankr. N.D. Ill. 1995) ("The situation in which trustees have been most commonly found to have acted outside of their authority is in seizing property which is found not to be property of the estate. The rationale for these decisions is clear: trustees act on behalf of the estate, and obligate only the estate, insofar as they are carrying out the duties required of their office. When they take action not within the scope of those duties, they are acting on their own." (citations omitted)); *In re Weisser Eyecare, Inc.*, 245 B.R. 844, 848 (Bankr. N.D. Ill. 2000) ("A trustee 'cannot be held personally liable unless he acted outside the scope of his authority as trustee, i.e. ultra vires, or breached a fiduciary duty that he owed as the trustee to some claimant.'" (quoting *State of Ill., Dept. of Revenue v. Schechter*, 195 B.R. 380, 384 (N.D. Ill. 1996))). Yet there is no such claim in this case. To the contrary, the Trustee brought this case in his official capacity as Debtor's subchapter V bankruptcy trustee, and there is no indication that he has acted beyond his authority in doing so.

The cases on which the Trustee relies—where courts have declined to apply insured-versus-insured exclusions to bankruptcy trustees' claims—do not hold to the contrary. None of the policies at issue in those cases included language that expressly defined the covered "company" or "insured" as including a bankruptcy trustee, unlike the Policy's definition of "Organization" in this case. *See In re Cnty. Seat Stores*, 280 B.R. 319, 329 (Bankr. S.D.N.Y. 2002) ("The language of the insured v. insured exclusion is not ambiguous. The words 'brought by' refer specifically to those entities and individuals who are defined and named in the policy.

8

'Company' as defined by the policy means [the debtor] and its subsidiaries and does not include or contemplate a bankruptcy trustee."); *In re Molten Metal Tech., Inc.*, 271 B.R. 711, 725 (Bankr. D. Mass. 2002) ("'Company' is expressly defined to mean [the debtor] and its subsidiaries. The definition includes no reference to successors or assigns of any nature."); *Yessenow*, 953 N.E.2d at 437 ("The [trial] court found that [the insurer] could have sidestepped any ambiguity by including trustees and debtors-in-possession in either the definition of the 'insured' or the language of the insured versus insured exclusion."). In short, USLI avoided any ambiguity as to whether the Insured vs. Insured Exclusion applies to bankruptcy trustees by expressly defining "Organization" to include them.

In the alternative, the Trustee argues that the Insured vs. Insured Exclusion does not bar coverage because the Derivative Action Exception applies to his claim.[3] According to the Trustee, "he is bringing his Claim ***in the nature of a derivative action*** to enforce the USLI Policy for harm by the Debtor's former directors against the Debtor." (Appellant's Resp. to Mot. to Dismiss ¶ 27 (emphasis added).) Notably, the Trustee does not state that he is bringing a derivative action; he states that he is bringing a claim "in the nature of a derivative action." The Trustee's careful word choice is not lost on the Court. "In plain terms, a derivative lawsuit is a

---

[3] In his reply brief, the Trustee refers to an action by a group of Debtor's unit owners in the Circuit Court of Cook County, which he claims "met all of the criteria to qualify as an exception to the [I]nsured v[s]. [I]nsured Exclusion" but "was stayed by virtue of the Bankruptcy Code's automatic stay provision (11 U.S.C. § 362) as of the date of the bankruptcy filing on April 20, 2021." (Appellant's Reply Br. at 4, Dkt. No. 9.) The Trustee acknowledges that this other action is "a derivative claim with no involvement by any member of the Organization or an Insured." (*Id.*) His concession only supports the Court's understanding that the Trustee's action here does ***not*** qualify as derivative action that triggers the Derivative Action Exception. Moreover, the Trustee asks this Court to "order the bankruptcy court to approve [the Trustee's] right to grant relief from the stay for the Circuit Court Action to proceed." (*Id.* at 5.) To the extent the Trustee asks this Court to grant relief from the stay, it does not appear that request was raised before the Bankruptcy Court. As such, the argument is waived and cannot be raised on appeal. *See Broaddus v. Shields*, 665 F.3d 846, 854 (7th Cir. 2011) ("[A]rguments raised for the first time in a reply brief are waived.").

9

common mechanism shareholders employ against third parties to see relief for wrongs done to the collective corporation when the board, i.e., the corporate body, refuses to sue." *Lara v. Naper Place Condominium Ass'n*, 2023 WL 2445585, at *4 (Ill. App. Ct. Mar. 10, 2023). *See also In re Abbott Laboratories Derivative Shareholder Litig.*, 325 F.3d 795, 803 (7th Cir. 2003) (explaining that a derivative action is a particular type of action in which "an individual shareholder seeks to enforce a right that belongs to the corporation"); *In re Hearthside Baking Co., Inc.*, 402 B.R. 233, 250 (Bankr. N.D. Ill. 2009) ("Under Illinois law, a shareholder may step into the shoes of the corporation and bring a derivative action when the corporation's officers, directors, or controlling shareholders breach a fiduciary duty to the corporation."). And indeed, under Illinois law, unit owners in a condominium association may bring a derivative action against current or former officers and directors of the condominium board for misconduct or breach of fiduciary duty. *See, e.g., Davis v. Dyson*, 900 N.E.2d 698, 709 (Ill. App. Ct. 2008). But here, the Trustee, not shareholders or unit owners, is asserting a claim against the former officers and directors.

Regardless of whether this lawsuit qualifies as a derivative action, the Derivative Action Exception to the Insured vs. Insured Exclusion does not apply, as the Bankruptcy Court correctly observed. The exception only applies "if such action is brought and maintained ***totally independent of***, and without the solicitation, assistance, participation or intervention of ***any of the Insureds***." (Policy at 39 (emphasis added).) Under the Policy, "Insured(s)" means "the Organization and the Individual Insureds," and as discussed above, the "Organization" includes the Trustee. (Policy at 36, 54.) Therefore, based on its plain language, the Derivative Action

10

Exception does not apply to the Trustee's claim because he brings the action as an "Insured" under the Policy.[4]

In sum, the Court concludes that the relevant Policy provisions are unambiguous and thus gives the language its plain meaning. Because the Policy expressly defines the "Organization" to include a bankruptcy trustee and because the Insured vs. Insured Exclusion bars coverage for claims "against the Insured" brought "by . . . the Organization," the Trustee's suit triggers the exclusion. The Derivative Action Exception to the Insured vs. Insured Exclusion does not apply. And so, the Policy bars coverage for the Trustee's claim.

## II.     Applicability of 11 U.S.C. §§ 365(e)(1) and 541(c)(1)

The Trustee further argues that the Policy's inclusion of a "bankruptcy trustee" in the definition of "Organization" and the Policy's Insured vs. Insured Exclusion, together, constitute unenforceable *ipso facto* clauses in violation of 11 U.S.C. §§ 365(e)(1) and 541(c)(1) of the Bankruptcy Code. Section 541(c)(1) provides, in relevant part:

> [A]n interest of the debtor in property becomes property of the estate . . . notwithstanding any provision in an agreement . . . that is conditioned on the insolvency or financial condition of the debtor, [or] on the commencement of a case under this title . . . and that effects . . . a forfeiture, modification, or termination of the debtor's interest in property.

11 U.S.C. § 541(c)(1). Relatedly, § 365(e)(1) of the Bankruptcy Code provides, in relevant part:

> [A]n executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on . . . the

---

[4] In his reply brief, the Trustee raises for the first time the argument that he cannot be an "Insured" under the Policy because the Policy "pre-dates his appointment." (Appellant's Reply Br. at 2–3.) Notably, the Trustee does not cite any supporting case law for his position. Moreover, as the Trustee did not raise this argument before the Bankruptcy Court or in his opening brief on appeal, the argument is waived.

11

> insolvency or financial condition of the debtor at any time before the closing of the case; [or] the commencement of a case under this title . . . .

*Id.* § 365(e)(1).

In other words, § 541(c) ensures that a debtor's interests in property, including contracts such as the Policy, become property of the debtor's bankruptcy estate. *See In re Allied Prods. Corp.*, No. 03 C 1361, 2004 WL 635212, at *3 (N.D. Ill. Mar. 31, 2004) ("The parties agree that the [insurance] [p]olicies are property of the estate in bankruptcy, under the broad definition of § 541(a) of the Bankruptcy Code, 11 U.S.C. § 541(a)."); *see also In re Allied Digit. Techs., Corp.*, 306 B.R. 505, 509 (Bankr. D. Del. 2004) ("Generally a debtor's liability insurance policy is property of the bankruptcy estate."). Whereas § 365(e)(1) renders unenforceable any provision in an executory contract that modifies or terminates that contract based on the bankrupt status of the debtor. *See Sable v. Morgan Sangamon P'ship*, 280 B.R. 217, 220 (Bankr. N.D. Ill. 2002) ("Executory contracts are governed by 11 U.S.C. § 365, which provides that *ipso facto* clauses that terminate an executory contract upon the bankruptcy of one of the parties are invalid."). "Both §§ 365 and 541 invalidate contractual *ipso facto* provisions for the reason that automatic termination of a debtor's contractual rights frequently hampers rehabilitation efforts[] by depriving the chapter 11 estate of valuable property interests at the very time the debtor and the estate need them most." *In re Allied Prods. Corp.*, 2004 WL 635212, at *4.

Applying these provisions to the present case, the Trustee argues that the Policy is unenforceable because it characterizes a bankruptcy trustee as part of the "Organization" and thus an "Insured," whose claim is thereby excluded from coverage under the Insured vs. Insured Exclusion. As the Trustee reasons, a bankruptcy trustee cannot exist without a bankruptcy, and so, the Trustee's appointment directly resulted from Debtor's bankruptcy. As the Policy as written precludes coverage for the Trustee's claim, Debtor no longer can derive the benefit of the

12

Policy precisely because Debtor filed for bankruptcy. In other words, according to the Trustee, Debtor's bankrupt status triggered the Insured vs. Insured Exclusion and thus de facto terminated the Policy by rendering it useless. Accordingly, the Policy's provisions are unlawful *ipso facto* clauses in violation of §§ 365(e)(1) and 541(c)(1).

This Court disagrees. The Court does not understand the Policy language as an attempt to "terminate[] or modif[y]" Debtor's contractual rights. 11 U.S.C. § 365(e)(1). Despite blocking the Trustee's claim here, the Policy's language does not preclude Debtor's estate from having the benefit of the Policy, even while Debtor remains bankrupt. For example, while the Policy excludes coverage for claims brought by bankruptcy trustees that fall under the definition of "Organization" against other "Insureds," it does not bar coverage for other types of claims. As such, the Policy remains an asset of Debtor's estate.

Furthermore, this Court agrees with the Bankruptcy Court's treatment of *Yessenow*, which holds to the contrary. *See Yessenow*, 953 N.E.2d at 441 (finding that a similar insured-versus-insured exclusion was unenforceable under § 541(c)). In declining to follow *Yessenow*, the Bankruptcy Court correctly observed that the Illinois Appellate Court did not cite supporting case law for its holding and that the policy there did not expressly define a bankruptcy trustee as an "insured." (*See* Mem. Op. at 4.) For the reasons stated above, this Court joins the Bankruptcy Court in concluding that the Policy language here does not "effect[] . . . a forfeiture, modification, or termination of [D]ebtor's interest in property," where that interest in property is the Policy itself. 11 U.S.C. § 541(c)(1). (*See* Mem. Op. at 4 (citing Michael D. Sousa, *Uncertainty Remains: the "Insured vs. Insured" and "Bankruptcy Exclusion" Provisions*, 2018 Norton Ann. Surv. Bankr. L. 10 (explaining that an exclusion like the one at issue "is a

13

contractual limitation of rights, not a forfeiture of the policy for purposes of keeping it beyond the estate under § 541(a)(1)")).)

Moreover, rather than rendering the Policy void upon Debtor's bankruptcy, the Policy's Bankruptcy Provision provides that the "[b]ankruptcy or insolvency of the Insured or their successors in interest ***shall not relieve [USLI] of its obligations*** [under the Policy]." (Policy at 45 (emphasis added).) By ensuring that USLI's obligations under the Policy survive Debtor's bankruptcy, the Bankruptcy Provision guards against the very *ipso facto* clauses that the Bankruptcy Code invalidates. The Trustee himself encourages the Court to "take[] [the Bankruptcy Provision] into account when construing the Policy and interpreting the exclusion that USLI is attempting to enforce." (Appellant's Resp. to Mot. to Dismiss ¶ 23.) As requested, this Court takes the Bankruptcy Provision into account and, contrary to the Trustee's argument, determines that the provision weakens the Trustee's search for an *ipso facto* clause in the Policy. The Policy remains Debtor's interest in property, and so, the Policy's definition of "Organization" and the Insured vs. Insured Exclusion, in concert, are not invalid *ipso facto* clauses in contravention of 11 U.S.C. §§ 365(e)(1) and 541(c)(1).

## CONCLUSION

For the foregoing reasons, the Court affirms the Bankruptcy Court's dismissal of Counts I, II, and III of the Complaint. The Clerk of the Court is directed to enter Judgment in favor of USLI.

ENTERED:

Dated: March 31, 2025

_____
Andrea R. Wood
United States District Judge